**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**LARRY WELLS; DONNA WELLS;** *and* **PLAINTIFFS**
**CONNIE FARMER,** *individually and as*
*personal representative of Charles Farmer*

V.                                                                               CAUSE NO. 3:12-CV-564-CWR-FKB

**ROBINSON HELICOPTER CO., INC.                                    DEFENDANT**

*consolidated with*

**WEBB GROUP, L.P.                                                              PLAINTIFF**

V.                                                                               CAUSE NO. 3:12-CV-613-CWR-FKB

**ROBINSON HELICOPTER CO., INC.                                    DEFENDANT**

**ORDER**

Before the Court is Robinson Helicopter Company's motion to dismiss or for summary judgment against Webb Group, L.P. Docket No. 137. After considering the arguments, evidence, and applicable law, the motion will be granted in part and denied in part.

**I.       Factual and Procedural History**

On September 1, 2009, Federal Aviation Administration inspectors Larry Wells and Charles Farmer were practicing helicopter landings and takeoffs in Jackson, Mississippi. They did so in their official capacities: the FAA had rented the helicopter for the day from Webb Group, L.P. The helicopter was a Robinson Helicopter Company R-44 "Raven I" bearing registration number N33PX.

While in the air, the helicopter began to vibrate. It crashed. Wells suffered severe injuries, while Farmer died.

In August 2012, Larry Wells, Donna Wells, and Connie Farmer – the "Wells plaintiffs," for simplicity – brought this suit claiming that Robinson was liable to them for manufacturing a defective product which caused serious injuries or death. They alleged that the crash was caused by a known defect called "mast rocking" or "chugging." The Wells plaintiffs asserted negligence, strict liability, failure-to-warn, and warranty theories of recovery.

That same month, Webb Group filed a lawsuit against Robinson seeking to recover its economic losses, such as lost business opportunities. Webb Group asserted similar theories of liability as the Wells plaintiffs. The cases were consolidated for discovery and trial.

In the present motion, Robinson argues that Webb Group's claims fail as a matter of law and fact. It specifically contends that Webb Group's negligence, strict liability, and warning theories are barred as a matter of law by the economic loss doctrine. Robinson then argues that the facts show that Webb Group's express and implied warranty theories lack merit. The motion is fully briefed and ready for review.

## II.     Legal Standards

### A.     Motion to Dismiss Standard

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the plaintiff's factual allegations as true and makes reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation," but need not have "detailed factual allegations." *Id.* (citation and quotation marks omitted). The plaintiff's claims must also be plausible on their face, which means there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

**B.     Summary Judgment Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1); *Tran Enterprises, LLC v. DHL Exp. (USA), Inc.*, 627 F.3d 1004, 1010 (5th Cir. 2010).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

**III.    Discussion**

Because this case is proceeding in diversity, the applicable substantive law is that of the forum state, Mississippi. *Capital City Ins. Co. v. Hurst*, 632 F.3d 898, 902 (5th Cir. 2011). State law is determined by looking to decisions of the state's highest court. *St. Paul Fire and Marine Ins. Co. v. Convalescent Servs., Inc.*, 193 F.3d 340, 342 (5th Cir. 1999). If the state's highest court has not ruled on the issue, federal courts are to "defer to intermediate state appellate court decisions unless convinced by other persuasive data that the highest court of the state would decide otherwise." *Herrmann Holdings Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 558 (5th Cir. 2002) (quotation marks and citation omitted).

**A.     Motion to Dismiss – Economic Loss Doctrine**

In this case, the helicopter crash deprived Webb Group of its property and future earnings from the use of that property; it can no longer rent out N33PX. That is an economic loss. The question now is whether economic losses are recoverable in tort or strict liability.

"The overwhelming majority of courts that have confronted the issue have concluded that a plaintiff who suffers only economic loss as the result of a defective product may have no recovery in strict liability or negligence, though such damages may be pursued under a breach of warranty theory of liability." *E. Miss. Elec. Power Ass'n v. Porcelain Prods. Co.*, 729 F. Supp. 512, 514 (S.D. Miss. 1990). This is known as the economic loss doctrine or economic loss rule. *See Lyndon Prop. Ins. Co. v. Duke Levy & Assocs., LLC*, 475 F.3d 268, 274 (5th Cir. 2007).

Although the Mississippi Supreme Court has never adopted the economic loss doctrine, it has been applied by federal courts in Mississippi forced to make an *Erie*-guess about Mississippi law. *E.g.*, *E. Miss. Elec. Power*, 729 F. Supp. at 514; *Lee v. Gen. Motors Corp.*, 950 F. Supp. 170, 172 (S.D. Miss. 1996). The Mississippi Court of Appeals, however, *has* taken up the issue. It agreed with the above-cited federal court cases that the economic loss doctrine applies in Mississippi. *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 736 So. 2d 384, 387 (Miss. Ct. App. 1999).

Webb Group argues that this Court should not apply the economic loss doctrine because this crash caused severe injuries and death, unlike less severe product failures in other cases to have applied the economic loss doctrine. It suggests that the doctrine "is inapplicable where there is a sudden and deadly failure of the product that renders it unreasonably dangerous." Docket No. 172, at 2. Alternatively, Webb Group asks this Court to apply an intermediate form of the

rule permitting economic loss cases to proceed where the risk of physical harm was significant even if the plaintiff was not physically harmed. *Id.* at 12-16.

Although this helicopter accident resulted in more serious personal injuries than other cases to have applied the economic loss doctrine, it does not follow that the rule should be abolished so that Webb Group may recover. There is another set of plaintiffs in this consolidated civil action – the Wells plaintiffs – who *did* suffer significant personal injuries in the helicopter crash and now seek damages from Robinson. If one of the purposes of tort and strict liability is to force manufacturers to internalize the physical and emotional costs to consumers caused by defective products (via settlements and verdicts from wrongful death/personal injury suits, etc.), *see State Farm*, 736 So. 2d at 387, then this consolidated action satisfies that purpose because the Wells plaintiffs are pursuing claims for physical and emotional injury again Robinson.

It may be that the intermediate, risk-based rule proposed by Webb Group provides more protection to consumers by expanding the pool of potential plaintiffs, thereby forcing manufacturers to make safer products – or it may not be. That is an empirical question beyond the scope of the present briefing. All agree, however, that the body ultimately charged with balancing the issues inherent in that question is the Mississippi Supreme Court.

Until that court says otherwise, the undersigned sees no reason to deviate from the conclusions of the Mississippi Court of Appeals and of its colleagues in this Court. The economic loss doctrine bars Webb Group's negligence, strict liability, and warning theories.

Finally, although this Court cannot certify the question to the Mississippi Supreme Court, at a point in the near future the parties should be prepared to discuss whether it is appropriate to make this issue immediately appealable under 28 U.S.C. § 1292(b).

### B. Motion for Summary Judgment – Warranty Theories

#### 1. Express Warranties

Webb Group's helicopter was delivered with two express limited warranties. The first stated that Robinson would repair or replace defective parts appearing within two years of the helicopter's delivery date or the helicopter's first 1,000 hours of operation, whichever came first.

In this case, it is undisputed that the crash occurred more than two years after the helicopter was delivered to Webb Group. By then, the first express warranty had expired. It does not matter that the helicopter had had only been flown for 237 hours, short of the 1,000-hour threshold in that warranty.

Webb Group argues that the two-year limitation is unconscionable because Robinson knew about the mast rocking problem for years but failed to take remedial action. Appropriate remediation, it says, would have been replacement of the front gearbox mounts.

Mississippi law permits courts to strike unconscionable terms. *See* Miss. Code Ann. § 75-2-302. The word "unconscionable" "defies lawyer-like definition. It is a term borrowed from moral philosophy and ethics. As close to a definition as we are likely to get is that which affronts the sense of decency." *Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695, 699 (Miss. 2009) (quotation marks and citations omitted).

The Court is not prepared to conclude that on its face, the two-year limitation in this express warranty is unconscionable as a matter of law. The summary judgment evidence also is insufficient to show that the two-year term is unconscionable as a matter of fact. It may be unconscionable for a manufacturer to issue a 15-day express warranty when it has knowledge that its product catastrophically fails on day 17, but we have no such evidence here. Even if Robinson knew that the front gearbox mounts were defective and failed to replace them, Webb

Group has not pointed to evidence suggesting that Robinson knew the front gearbox mounts would fail after the two-year or 1,000 hour marks.

Pressing on, Webb Group invokes the helicopter's second express warranty, which provided a three year or 2,200 mile warranty (whichever came first) on the helicopter's main and tail gearboxes. "During this period," the warranty reads, "if a gearbox must be overhauled due to failure of a part which was defective when it left the factory, [Robinson] will pro-rate the cost of the overhaul . . . ." Docket No. 137-8. It is undisputed that the accident occurred before both the three-year and 2,200-mile limitations in this second warranty. Robinson argues that this second warranty is "inapplicable." Docket No. 138, at 16.

This argument cannot be resolved because the summary judgment evidence suggests a fact dispute as to whether the front gearbox mounts of which Webb Group complains are a component of the main gearbox. Testimony should clear up that question. Other relevant questions suggested by the briefing include whether a gearbox overhaul extends to replacing the front mounts, whether defective mounts caused Webb Group's claimed losses, and the extent of damages Webb Group would be entitled to recover if Robinson did in fact breach this warranty.

### 2. Implied Warranty of Merchantability

Robinson's brief insinuates that no further warranties apply because its express warranty was "exclusive" and disclaimed any implied warranties. Docket No. 176, at 9 n.6. In Mississippi, though, the law "does not allow the disclaimer of the implied warranties of merchantability or fitness for a particular purpose." *Mercury Marine v. Clear River Const. Co.*, 839 So. 2d 508, 514 (Miss. 2003) (citations omitted). The parties dispute whether the former was breached.[1]

---

[1] Webb Group's limited defense makes summary judgment appropriate on any claim it had for breach of the implied warranty of fitness for a particular purpose.

Robinson argues that there was no such breach because the helicopter had been successfully used "for an extended period of time without difficulty." Docket No. 138, at 16. It principally relies upon a line of cases where automobiles were found not to breach the implied warranty of merchantability. *See, e.g.*, *Ford Motor Co. v. Fairley*, 398 So. 2d 216, 219 (Miss. 1981) (finding that "the car had been driven over two years and 26,649 miles before Fairley experienced any difficulty with it. Such service as a matter of law negates a breach of an implied warranty of merchantability of this car."); *Lee*, 950 F. Supp. at 174 (dismissing claim under *Fairley* where "all vehicles sought to be included in this class action would be a minimum of five years old"). Robinson contends that it cannot have breached the implied warranty because Webb Group's helicopter was regularly used and, if it had flown at cruise speed for all 237 hours it was in the air, would have traveled enough miles to circumnavigate the globe at the equator. Docket No. 138, at 19.

"In order to be merchantable, goods must, among other requirements, be fit for the ordinary purposes for which such goods are used." *Lee*, 950 F. Supp. at 174 (quoting Miss. Code Ann. § 75-2-314). While the Mississippi Supreme Court determined that driving a car for more than two years and 26,000 miles satisfied the ordinary purpose of a car in 1981 (at least for purposes of the implied warranty of merchantability), other courts have found this line of cases inapplicable to warranty claims involving more complex machines.

In *Indemnity Insurance Co. of North America v. Deere & Co.*, No. 2:11-CV-260, 2012 WL 4434718, at *6 (N.D. Miss. Sept. 24, 2012), for example, a cotton picker manufacturer argued that its product satisfied the implied warranty of merchantability because it had been used without problem for four years. There, as here, the manufacturer relied upon *Fairley* at summary judgment. *Id.* The court found "that a cotton picker, which is used only during the cotton harvest

8

season, would not encounter the same persistent use as an automobile, and thus would not have as much opportunity to manifest problems." *Id.* Summary judgment was denied. *Id.*

As in *Indemnity Insurance*, this Court finds that the car cases do not control this suit. The standard is not whether the helicopter could have circumnavigated the globe if it flew at certain speeds.[2] One expects a helicopter to have significant capabilities. The question, rather, is whether the helicopter "conforms to the quality of other similar products in the market." *Id.* at *4. That kind of apples-to-apples comparison cannot be resolved on this record.

The above constitutes Robinson's only argument for summary judgment on the implied warranty of merchantability. It has not argued that Webb Group cannot meet any of the five elements Webb Group will have to prove at trial. *See id.*; Miss. Code Ann. § 75-2-314. Accordingly, this claim will be reserved for trial.

## IV.   Conclusion

The motion is granted in part and denied in part.

**SO ORDERED**, this the 16th day of March, 2015.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[2] The standard cannot be so rigid. The purchaser of an Airbus 380 commercial airliner would expect such a plane to circumnavigate the globe every few days.