IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**LARRY WELLS; DONNA WELLS;** *and*                                                    **PLAINTIFFS**
**CONNIE FARMER,** *individually and as*
*personal representative of Charles Farmer*

**V.**                                                                    **CAUSE NO. 3:12-CV-564-CWR-FKB**

**ROBINSON HELICOPTER CO., INC.**                                                    **DEFENDANT**

*consolidated with*

**WEBB GROUP, L.P.**                                                                         **PLAINTIFF**

**V.**                                                                    **CAUSE NO. 3:12-CV-613-CWR-FKB**

**ROBINSON HELICOPTER CO., INC.**                                                    **DEFENDANT**

## ORDER

Before the Court are nine motions in limine. Docket Nos. 220, 221, 223, 225, 227, 229, 231, 234, & 236. This Order resolves six of them.

The allegations of this case have been recited in prior Orders. *See Wells v. Robinson Helicopter Co.*, No. 3:12-CV-564, 2015 WL 1189847, at *1 (S.D. Miss. Mar. 16, 2015). It is enough to say that this is a product liability and warranty case arising out of a fatal helicopter crash. *Id.* Trial is set for next month.

**I.    Defendant's Motion to Bar Testimony of In-House Counsel [220]**

Robinson Helicopter Company first seeks an Order prohibiting the plaintiffs from eliciting testimony from two of Robinson's in-house attorneys. The plaintiffs agree as to one of the attorneys but say that in the event of a punitive damages phase they may need to call Chief Financial Officer and Corporate Attorney Tim A. Goetz to testify about Robinson's net worth,

and only then in his capacity as CFO. Goetz is listed as an attorney of record on the docket sheet of this case.

The Court discussed the motion with the parties at the Pretrial Conference. The discussion revealed two sub-issues.

The first concerns how the plaintiffs are supposed to receive and evaluate evidence on Robinson's net worth. Robinson acknowledges its obligation to have net worth information available at trial, *see* Docket No. 255, but it is not clear when that information must be exchanged. Case law does not answer this question. *Compare Price v. Lockheed Martin Corp.*, No. 4:04-CV-123, 2006 WL 1686568, at *3 (S.D. Miss. June 19, 2006) ("the [sworn] financial statement shall be held and maintained as private by the Defendant and the Defendant's attorney until such time as the court rules that punitive damages are an appropriate subject for the jury's consideration") *with Smith v. Schmidt & McGarland Firm*, No. 3:06-CV-25, 2008 WL 1716646, at *1 n.1 (N.D. Miss. Apr. 9, 2008) ("It is logical that plaintiff's counsel should have some idea of the nature and extent of the net worth of the defendants going into the trial; moreover, if the documentation presented is deficient, plaintiff's counsel should have the means to correct that before trial.").

A recent decision from Judge Anderson collected and discussed the competing decisions in this State, District, and Circuit. "Each side has valid arguments for its position, and the rulings have been inconsistent throughout the courts," she wrote. *Regions Ins., Inc. v. Alliant Ins. Servs., Inc.*, No. 3:13-CV-667, 2015 WL 1886852, at *5 (S.D. Miss. Apr. 24, 2015). Despite the inconsistency, a pattern did emerge in the cases: "A review of the rulings by magistrate judges and district judges throughout the Fifth Circuit reveals that the majority of those opinions allow net worth discovery during the discovery period." *Id.*

The Court is inclined to follow suit, and finds Judge Alexander's reasons in *Smith* to be persuasive. The plaintiffs should have an idea of Robinson's net worth and sufficient time to examine Robinson's documentation for deficiencies. Defense counsel shall produce net worth information to plaintiffs' counsel by the beginning of trial. Net worth information shall be subject to an appropriate protective order.

The second sub-issue is whether the plaintiffs may call Robinson's in-house attorney and CFO to testify about the net worth information during a punitive damages phase. The disclosure of sworn net worth information should eliminate the need for a witness on this subject. If not, Robinson may designate a non-attorney corporate representative to speak on net worth. As long as that person is available, the plaintiffs will not be permitted to elicit testimony from Goetz.

The motion is granted in part and denied in part.

## II.     Plaintiffs' Motion to Exclude Douglas Tompkins [221]

The plaintiffs argue that Robinson's Chief Pilot Douglas Tompkins should be prevented from testifying at trial because he will present cumulative testimony and testimony which is not helpful to the trier of fact.

The Court has already disallowed the presentation of cumulative testimony. In finding Tompkins' testimony admissible under *Daubert*, it specifically found that Tompkins' second and third opinions may turn out to be cumulative of Robinson's other experts. Docket No. 209, at 13. But it is up to Robinson to determine which experts it wants to put on for which opinions. The plaintiffs' objection will be carried with the case and may be reurged at an appropriate time.

The plaintiffs' other argument contends that Tompkins' testimony will not assist the trier of fact because it fails to satisfy the "reasonable degree of probability" standard, contains "untested hypotheses," and shows Tompkins' lack of qualification. These arguments should have

3

been raised in the plaintiffs' *Daubert* motion and are now untimely. To the extent they cross over into non-*Daubert* issues, though, the Court thinks their elicitation at trial will make for a lively cross-examination. This part of the motion is denied.

### III. Plaintiffs' Motion to Exclude FAA's Offer to Pay Webb Group [225]

The plaintiffs contend that the Federal Aviation Administration's offer to pay Webb Group to settle Webb's Federal Tort Claims Act claim is inadmissible under Federal Rule of Evidence 408. Robinson acknowledges that the settlement *amount* is barred by the Rule, but seeks to introduce Webb's claim form and subsequent statements to the FAA. The claim form (a Standard Form 95) and statements go to credibility, Robinson says, since in them Webb advances pilot negligence as the cause of crash, which is contrary to the product liability theory Webb has advanced in this suit.

The undersigned is not persuaded that a SF95 is a settlement offer within the scope of Rule 408. The primary purpose of the form is to put the government agency on notice of a claim so that it can investigate, evaluate, and consider whether the claim can be settled. Secondly, the form is a precondition that must be met before the alleged tort victim can file a suit against the government under the Federal Tort Claims Act. *See* 28 U.S.C. § 2401(b). Robinson may ask Webb in detail about the apparent contradiction between his SF95 and his claim in this proceeding.[1]

Whether Robinson may ask Webb about later statements he made to the FAA depends; the content and context of those statements is presently unknown. If they were made pursuant to settlement negotiations they are inadmissible under Rule 408. The plaintiffs reserve the right to object to such questioning at trial.

---

[1] That said, the SF95's one-sentence reference to the NTSB report may need to be redacted pursuant to this Court's earlier Order. *See* Docket No. 202.

4

Further down the line is the FAA's offer to pay Webb. The existence of the offer and its amount are both inadmissible under Rule 408. Redaction of the amount alone may not solve the problem.

For present purposes, then, the motion is granted in part and denied in part.

**IV.     Plaintiffs' Motion to Exclude Peter Riedl's Late Supplemental Report [227]**

Because the plaintiffs withdrew this motion at the Pretrial Conference, it is moot.

**V.      Plaintiffs' Motion to Exclude FAA's Remedial Measures [229]**

The plaintiffs next argue that although this crash occurred during a flight conducted under the auspices of the FAA's "4040" employee training program, references at trial to later changes the FAA made to that program are inadmissible as irrelevant under Rule 402 and as a subsequent remedial measure under Rule 407.

Even crediting Robinson's various arguments casting doubt on whether the FAA's changes are a subsequent remedial measure within the meaning of the rule, its brief does not address the claim of irrelevance. That may be because changes to the 4040 program indeed have little relevance to the product liability claims and defenses in this suit. Robinson may present its pilot error defense, but an inquiry into the causes of the FAA's programmatic decision risks taking our trial too far afield.

At the Pretrial Conference, Robinson argued that under Mississippi law it may seek to apportion fault to other responsible parties, including the FAA. But apportionment of fault is not inconsistent with excluding evidence of subsequent changes to the 4040 program. Robinson may still argue that the cause of the crash was the plaintiffs' own piloting error(s), compounded or facilitated by those FAA training requirements effective at the time of the accident.

The motion is granted.

**VI.     Defendant's Motion to Exclude the NTSB's Safety Recommendation [234]**

The parties appeared to reach an understanding of this issue at the Pretrial Conference. They agreed they would neither introduce into evidence the NTSB Safety Recommendation in question nor elicit testimony about the Safety Recommendation from witnesses, despite the fact that both sides' experts are familiar with the Safety Recommendation and relied upon it in forming their opinions.

The Court understands that the parties' agreement will be memorialized in the final Pretrial Order. The motion will be denied pending that document's completion.

**SO ORDERED**, this the 24th day of June, 2015.

                                                                s/ Carlton W. Reeves
                                                                UNITED STATES DISTRICT JUDGE